This case involves the detention of four brothers, natives of Iran, who have been detained since October 2, 2001, three weeks after September 11, based entirely on hearsay and innuendo. Petitioners claim that there is no reliable evidence in the record to support a finding that they are threats to national security. The BIA held that they were associated with the Mujahideen, or the MEK, and therefore a danger to national security. But the only non-hearsay evidence in the record is that two of those four individuals attended a rally in Denver, attended a public rally by over 1,000 individuals, including a United Yet the government claims that this Court has zero power to review the lawfulness of that detention, even though petitioners claim that detention is a violation of the statute and a violation of the Constitution. Case law makes clear that there is review in this Court, and this Court has to look at the record here. The Supreme Court decisions in St. Cyr and Kim make clear that habeas cannot be eliminated unless Congress unmistakably makes clear that it intends to do so. And it clearly did not do so, as the Supreme Court in Kim said, specifically about 236e and held that in that decision. And I would add, to do so, as the Supreme Court implied, would violate the Constitution. So the only issue here is whether, under the Supreme Court decisions in Kim, St. Cyr, and Zebaitis, and this Court's decision in Gutierrez-Chavez, is whether petitioner's claims that their continued detention is unlawful because it is not based on any reasonable evidence and that it violates the Constitution and the statute is reviewable here. And all the petitioner's claims are, and I'd like to set those forth. First, their claim that they are detained based on hearsay and that that violates the Due Process Clause and is contrary to the Supreme Court's decision in Bridges v. Wixon is clearly reviewable. Second, they claim that they are detained without any reliable evidence that they are a threat to national security and that that violates substantive due process. That also is clearly reviewable here, as the Zebaitis Court makes clear. Third, even if it is not a substantive due process violation, to keep someone detained based on no reliable evidence that they are a danger to national security, that would be manifestly unjust and reviewable in this Court under the Court's Gutierrez decision. Fourth, even if it's not a procedural due process violation, to base detention on hearsay, and even if all of the government's assertions are given credence and deemed to be true for the sake of argument, they are being held in detention for mere association, and that violates both substantive due process and the First Amendment. The bottom line sum of the evidence is that the individuals, if you give credence to the government's hearsay evidence, is that they are sympathizers or supporters of the MEK. Bottom line, a supporter, based on the testimony of the FBI agent, is someone who does as little as attend a demonstration. A sympathizer, similarly, might attend a demonstration, might believe in the causes. All this is First Amendment-protected activity. No basis whatsoever to conclude that they have, they are dangers to national security. Fifth, the BIA created a new mandatory detention classification on its own, contrary to what Congress specified in both INA Section 236A, which is the provision that put in the Patriot Act stating forth how someone gets detained if they are alleged to be associated with terrorist organizations in any way, or under 236C1D, which also is a mandatory detention bar for alleged terrorists or people who are members of terrorist organizations or supporters of terrorist organizations. What the BIA did was created a category not specified by Congress, not within 236C1D and not within 236A, and said that if you are associated, whatever that means, with the terrorist organization, that you can be held in jail without bail. What they've done there is create a detention category that Congress did not authorize and that violates the statute. Lastly, the immigration judge concluded that there were dangers to communities that there were dangers to communities because bystanders may get hurt. If the Iranian government decided to go after these individuals here and take action against them, that somehow bystanders may be hurt. Well, this Court addressed that issue in Chima and said that's entirely improper consideration to say that there are dangers to the community. So going to the underlying merits then, underlying merits of all these claims, the BIA concluded that there were changed circumstances that warrant detention without bail, and we believe that is not supported by the record. I'd like to go through that. There's three reasons that the combination of the BIA and the immigration judge pointed to. They first of all said that there was information about this cell form, whatever that may be, and there's dispute as to what that is. This is Exhibit 19 in the record. The cell form or the list of network individuals was a form that was testified to by an anonymous informant, somebody who told Agent Castillo, the FBI agent who testified, that this was a list of either sympathizers, supporters or members of the MEK. There's no, nothing in the record to say what the basis of that conclusion is or who said that. Complete hearsay. Castillo said, though, that it was a list of members, supporters or associates based on that. Now, the declaration that was submitted by the Petitioner's expert, Kamrava, and that's at ER 17274, disputes that conclusion entirely. It says that this appears to be a travelogue of people who attended the June rally in Denver, because it lists the times of their flights, whether they came or not, et cetera. It also says that it's a mistranslation. The word cell refers to network. And, but that is principally the basis for the BIA's conclusion, that these individuals are somehow associated with the MEK. The second piece of evidence, and there's three in total, was the testimony of this individual, Tabatabai. Castillo says that Tabatabai states to him that these individuals were either members or supporters of the MEK. Now, the bond hearing, he makes the conclusion, he says that he was told that all four were supporters of the MEK. In the withholding trial, which is part of this record here because it was submitted to the district court as is permissible, in the withholding trial, Castillo contradicts his own testimony. He says, well, two of them were supporters and two were mere sympathizers. It calls into question whether there should be any reliance placed on Castillo's testimony whatsoever, notwithstanding the fact that that, in turn, was based on an anonymous informant who's not presented in court whatsoever. Castillo says that Tabatabai says that the data supporter can do as little as go to a demonstration. Tabatabai, in his deposition, which was subsequently taken and presented to the district court, completely denies that he ever said that, completely denies it. And that's part of the record also. So we have someone not in court who Castillo says said this, and then we have the individual in a deposition saying that's completely untrue and never said that. This cannot be relied on as a changed circumstance. The last changed circumstance, allegedly, was that there was a letter from one of the individuals, one of the four, to an alleged MEK member, this guy Hamidi. Well, the accepted proffer in court, in immigration court, was that they met each other and there was a letter that was sent. That's the sum of the information. The fact that somebody meets someone who's alleged to be a member of MEK, even if that's accepted as true, and, again, that's hearsay upon hearsay, is no evidence that these individuals in any way supported terrorist activity or any way a threat to national security. As a matter of fact, the FBI, and therefore the INS, had the letter. They possessed that letter. Did they introduce it? No. Why not? The conclusion's obvious, because it probably says nothing damaging. If it did say anything damaging, if it had anything damaging, they would have and should have presented that. I would like to focus on a couple areas that I have questions on that maybe you can clarify. Sure. These three pieces of evidence that you've just gone through rely primarily on hearsay problems, although with Tabatani it's also a potential internal inconsistency. And with Castillo's testimony also. And with Castillo's hearsay testimony. Correct. Castillo testified in court, but his evidence was based on someone else's. Was based upon hearsay. Correct. So the question I had as to whether evidence based on hearsay that may have stemmed from Tabatani, whether you actually challenged that properly in your brief, or whether you mentioned it in your reply brief, but not your main brief and that wasn't discussed before, and whether it's really just the informant's testimony that was properly challenged on this hearsay problem. There were specific objections to Tabatabai's, to the testimony about Tabatabai in the record. The trial counsel objected to his testimony. Right. To Castillo's reference to Tabatabai. Maybe I wasn't really clear, but I understood from reading your brief, when I read your brief, I thought that the gist of your hearsay problem was the informant. And that's how I read the blue brief, the opening brief. So that's what I was focusing on. And then Tabatama's hearsay problem didn't seem to come up until the reply brief. But am I missing something? Both. I almost apologize. I'll take a second to go through this. But the challenge was to the admission of hearsay in general and the reliance by the immigration judge and the board on hearsay. Okay. Well, I'll go back and try to figure it out from the record. But of the issues that you raised, and as you know, there are so many because we have the multiple questions of do we have jurisdiction. But let's say in the midst of all these jurisdictional challenges, let's just assume for talking purposes that the constitutional issue you raise on due process on the hearsay would be, we would have jurisdiction over that because it's a constitutional claim under habeas. Would you focus on why you think, you know, what the constitutional error is and if there is an error, why it's not harmless in your view? Okay. Well, the constitutional error is severalfold. One is the detaining someone deprived of their liberty based on hearsay evidence violates due process, and the Supreme Court held that in the Bridges v. Wixson case where the whole essence of the evidence against the individual, the member of the Communist Party was an anonymous informant, and the Supreme Court said that's you can't do that. You've got to present the individual in court and have the right to cross-examine. So that's one aspect. Confrontation clause. Confrontation. Correct, Your Honor. It would be due process. But you've been doing it under due process. Due process. Rather than the confrontation clause. Well, it's the right to confront the witness, but under due process. Correct. Because we're in an immigration proceeding. Because it's an immigration. Correct. Then, secondly, there has to be a basis for concluding that they can only be held if they're a national security threat. Under said bias or that would violate substantive due process. You have a right to liberty unless there's a compelling government interest and a justifiable reason to hold somebody. And those have been limited by case law to the danger to national security under Battelle or. Again, this is in a generality. Let's say that if you take out the hearsay statements, what is the evidence left on national security threat? Well, as I said before, even if you – even if everybody was in court and appeared in court and they testified there was adequate cross-examination. The ultimate sum of the evidence is that they attended – two of them attended a rally in Denver and that two or four of them – well, two of them were sympathizers to the M.A.K. and two of them were supporters to the M.A.K. And Castillo defines supporter as doing as little as going to a demonstration. And so the ultimate conclusion of all the evidence, even if it was all in court, is that they're being detained on purely First Amendment protected activity. There's nothing that they're alleged to have done in any way to support terrorist activity, to support criminal activity, to engage in criminal activity, to do anything but sympathize with an organization that the government does not like. Now, I would also point out that the – their evidence – the evidence is that they sympathized with – with the National Council of Resistance. And that was what – who called the rally in Denver. The government, subsequent to detaining them, designated the National Council of Resistance as a – as a front organization or a similar organization, the same organization ultimately as the M.A.K., which had previously been designated as a terrorist organization. But even if the allegations were that they attended a rally of the M.A.K. and – and were supporters of the M.A.K. and by supporters, Castillo defines that as little as going to a demonstration. And again, there's no evidence of doing anything else. That violates the First Amendment because they're entitled to go to demonstrations, even of organizations that we don't like. That's what this country's about. Kagan. Well, so they – in your view, they could go to a demonstration of a designated terrorist organization, and that wouldn't be a basis for suggesting that there may be a national security threat? That's – that was the conclusion, correct, that they were a national security threat because the board says they were associated in some way with the M.A.K. and the evidence of association is attending a rally, that their names are on this – this form. But the evidence is that those – that's a form of either – the government's evidence assertion is that the form of sympathizers, supporters or members, and in – in the expert's opinion, and as the immigration – both immigration judges in withholding cases concluded, was mere a list of people who attended a rally and not in any way did anything for the organization. That's what the two immigration judges in the withholding cases concluded. Now, I understand we're reviewing the Bond decision here, but that was presented to the district court, and that's – and that's relevant. You have not the actual conclusions, per se, but the evidence there, and the evidence is that all they did was go to an M.A.K. rally. There's nothing more in the evidence besides the fact there was a letter to somebody they alleged to be with the M.A.K., and the government had that letter. You don't have that letter. No, but I think the logical conclusion is since the FBI had the letter, if there was anything damaging in that, they would have presented that. So the only evidence is that someone wrote a letter to someone he was in prison with, and that person happened to be, in the government's opinion, a member of the M.A.K. I better say it in the last few minutes. I know I'm going to take up some more of your time, but I'm sure you'll get repatriated at the appropriate moment. Okay. But I'll – Okay. Guaranteed, okay. Detrimental reliance. Here we go. So I'm going to go back to the jurisdiction question. Okay. When you talk about the due process, you know, that's easy enough to separate out as constitutional. The question I have is that several of these, I think number three and four of your list of potential jurisdictional things, you suggest are not really kind of flat-out constitutional, but that they would come within Gutierrez. And Gutierrez, in the end, said that there wasn't jurisdiction over these abuse of discretion type decisions. So what do you think would be a workable rule for deciding whether something really falls under the rubric of abuse of discretion or it's masquerading as a constitutional claim, but it's not really a constitutional claim, and so it falls under Gutierrez as opposed to a place where we have jurisdiction? Sure. Well, I think in the bond context, it would be, for instance, if the immigration judge or the board said, you know, $50,000 bail to ensure your presence here to protect against a flight risk, and you think that's an abuse of discretion, it should be $5,000. I think probably under 236e, that may be barred. Now, I don't want to concede that necessarily, because maybe it's – maybe that conclusion of the flight risk is based on some evidence that is inadmissible or something else violates some statute or constitution. So there may be a reason. But if it's just like in Gutierrez, just you weigh the facts and I sort of feel, you know, So do you think you need a colorable constitutional claim? For example, if instead of being so obvious as if you made it where it's, I wish it was 5, not 50, you said, you know, that's really an Eighth Amendment violation, do you think you'd – so now I've raised a constitutional claim on the $50,000. Under the circumstances, it's an Eighth Amendment violation. Do you think the Court would need to at least see if it's a colorable constitutional claim before taking jurisdiction, or would we simply say they alleged it, therefore, they're in? Well, I think there'd have to be an assessment that it's not just some – something made up to try to get into court. But I think, for instance, let's say there was, you know, someone was held on, you know, $20 million. You know, that may be, you know, manifestly unjust and – and reviewable. You know, say he's committed a, you know, one drunk driving and they say $20 million. I would assert that's probably reviewable in court, because it's so arbitrary and so often prior decisions, et cetera. I mean, so I think there would be, even if it's an amount-of-bail determination. But I think that here we're in a situation where we've got not only, you know, clearly constitutional claims, but I think even if we didn't, I think that the conclusion of no bail, that is, detaining someone pending their hearing when they don't fall under the mandatory detention provisions that Congress set out, has to be reviewed by a district court, that that violates that that – that that, whether or not that is based on reasonable evidence and there's foundation for that. Even the Supreme Court back in the 50s in the Carlson v. Landon decision said that the determination of bail has to be based on a reasonable foundation. And I think that's been – and the Supreme Court, they reviewed that under habeas. And I think this Court would have to review that here, even if it's examining just the evidence. It's got to be reviewed by the courts when someone's been completely deprived of their liberty. That cannot be left for the agency ultimately to determine. Thank you. I was – I'm sure the government will have a view on this. But as usual, Congress has kind of doubled our work because we spend a huge amount of time figuring out our jurisdiction before we get to your – if we get to your substantive issues. Thank you. Good morning. Alison Igoe. I'm an attorney with the Department of Justice Civil Division, and I represent the Attorney General. These are four aliens who are illegally in the United States, who are here. Their presence is – they are present in the United States because they violated the immigration law. There is no dispute about that. They are in removal proceedings. There's no dispute about that. They do not yet have a final administrative removal order, and so therefore, their removability is being contested. They are being detained under INA Section 236, which gives the Attorney General unlimited discretion to detain aliens during removal proceedings. There is no review by this Court under 236e, which precludes the review not only of arbitrary decisions, but the second sentence of that provision says of any decision or action by the Attorney General under this provision. 236b gives the Attorney General the discretion at any time and for any reason to revoke bond. The Attorney General in this case, based on changed circumstances, revoked the bond of the Mearmady brothers. You don't think we have jurisdiction to review a constitutional challenge to that? We would not argue that, if to say it's here. But our argument is that there is no constitutional challenge in this. What is being – what is being put forth as a constitutional challenge is really just a sufficiency of the evidence. And I think that a very – not even a close review of the Petitioner's brief in this case really shows that. I mean, on page 3, Petitioners now challenge that decision, asserting there was insufficient evidence to find they had engaged in any terrorist activity. That is the basis for their argument. And Mr. Vanderhaus stood here and said that there's no reliable evidence. There's insufficient evidence. The evidence wasn't reliable. And that's the basis. And he gave three – he gave three grounds. Hearsay evidence. First of all, hearsay is admissible in bond proceedings in immigration court. Hearsay is admissible in merits proceedings in immigration court. That's not disputed. Second of all, in this case – Kennedy, but there are conditions on the admission of hearsay. Yes, that it be fundamentally fair. But there are also conditions on even if this were a constitutional – rose to the level of a constitutional question, there are limits on that. And in this case, the Petitioners never challenged – all of the hearsay evidence came through the testimony of Agent Castillo. The Petitioners never objected to Agent Castillo's testimony in this case. So they never objected. This is basically a procedural due process question. It's that they should have had the opportunity to confront, but they never objected. And this Court has made clear in case after case that even in cases where there's a constitutional violation argued, if the board or the immigration judge could have taken care of it, if it's a question of a procedural violation, that the failure to exhaust an administrative remedy will preclude the Court from addressing that. And that's basically for judicial efficiency purposes. Had the Petitioners said at the immigration judge stage, hey, wait a minute, we object to him testifying about this, there could have been some accommodation made. I want to – oh, the second – the second argument that the Petitioner makes is that there was no reliable evidence of association. That's a question of – again, of sufficiency of the evidence. Third, they say there's no reliable evidence that they were a danger to national security. They don't have to be a danger to national security. 236A or 236B gives the Attorney General discretion to revoke bond for any reason at any time. And I think that the Petitioners in this case give very short shrift to a long line of precedent by the Supreme Court that allows the Attorney General to detain aliens during removal proceedings. Throughout these – throughout this case, the Petitioners have thrown in the Zarbides case and they've – they've – and in fact, in their most recent 28J letter, they put before this Court the case of Tai that relies on Zarbides. These Petitioners are not in that situation. They do not have a final removal order. There's no removal period that is running. These Petitioners are in a very similar situation to the Petitioner in Kim. And in Kim, what the Supreme Court said in that case is that this Court has recognized detention during deportation – deportation proceedings as a constitutionally valid aspect of the deportation process. They do not limit that. They don't say there has to be sufficient evidence. And in fact, in Kim – in Kim, we were talking about people who were legal permanent residents of the United States who had been convicted of a crime and who were being mandatorily detained, and the Supreme Court said that the Attorney General – that the Congress had the ability to – to put that provision into the statute because there was evidence that 25 percent of criminal aliens don't show up. Those aliens in Kim did not have an individualized bond hearing, but the Supreme Court said that statistics that 25 percent of aliens with criminal records who are in deportation proceedings who don't show up, that was sufficient to justify the mandatory detention of legal permanent residents who are in removal proceedings and their removability being examined on the basis of that conviction. In this case, we have four brothers who are here illegally in this country. They had no legal basis. They overstayed. That's true of every immigration case we have. No, it isn't, Your Honor. There are many legal permanent residents. Right. But many – that's not the basis for a determination that they were here illegally because that's usually the status in which they present themselves here. But under 236a, other than people who are mandatorily detained, that provision gives the Attorney General unfettered discretion. And if, as you say, those are most of the cases, Congress recognized that and yet said that the Attorney General, without any limitations, didn't stand sufficient evidence, said he can detain, he can release on bond, or he can impose any limitations that he chooses, and went on to say that in any case, at any time, the Attorney General has a discretion to revoke a bond, which is what he did in this case. And so – and then went on to say that those decisions, those discretionary decisions, or any other decision under that statutory provision are not reviewable. But the – so let's step back to see what is reviewable here. Well, yeah. If there is a constitutional – if there is a legitimate constitutional claim, would you agree that that's reviewable? I think, if we're sincere, we would not argue that there is no habeas jurisdiction. Okay. And habeas jurisdiction – Is there any – anywhere in 2241 that talks about exhaustion of administrative remedies as an absolute bar as opposed to our decision to do it prudentially? No. And I – and I don't think that there would be an exhaustion requirement necessarily, because the problem with administrative remedies with regard to substantive constitutional violations is that the – that, for instance, challenging the statute, the constitutionality of the statute, the board would not have the ability to find a statute unconstitutional. And so what the Court has said in situations like that, it's futile to exhaust because the board doesn't have the ability. But this Court has, time after time, said that when you're talking about a procedural due process question, where it's an issue of objecting to the admission of evidence that a court could – could resolve at that moment, could take a look at and make a decision, that that type of exhaustion, there should be a requirement. And that – But what's the best authority for that when it relates to something, in this case, the hearsay, which arguably is a due process-slash-confrontation constitutional issue? But again, Your Honor, I'm just asking what's the best authority so I can go look at it. Well, I don't have it off the top of my head, and I will be very happy to submit it to you later. But they are arguing that hearsay is a due process question. But in fact, hearsay is an evidentiary issue. It's a Federal rules of evidence issue. The Federal rules of evidence do not apply in immigration proceedings, and they don't apply in immigration bond proceedings. The Petitioner has made this a constitutional issue by claiming that it's due process, but it's basically a challenge to the Federal rules of evidence that don't apply. And even this Court has said that the question of hearsay, you take a look at whether it was fundamentally fair. And I think part of that question has to be that they had an opportunity to object to it at the time it was offered, and they did not. And they've come into court now with perhaps, and I give Mr. Vanderhaar credit, with perhaps a more aggressive attorney, but they went through two levels of administrative proceedings without objecting to this, and they're coming into this Court now and they're asking this Court to overturn the Attorney General's decision to revoke bond at any time, that unfettered discretion. And whether or not 236e even applied, this Court in other instances has said that when something is written in a way that precludes the Court from enunciating any standard against which to hold the decision, that it's not reviewable. They've done the Court has done that in immigration proceedings where there's a question of a sua sponte decision by the Board to reopen. The Court has said the regulation gives the Board unfettered discretion. It doesn't give a basis for weighing that decision that the Court can look and see whether the Board has abused its discretion. And that's the same situation with this statute. This statute says at any time. So there didn't have to be evidence of national security risk. In this instance, the Attorney General felt that finding evidence in a safe house maintained by a by an organization that is designated a terrorist organization by the Secretary of State, that that was sufficient evidence, along with the with of Agent Castillo, who has experience dealing with the MEK, who had knowledge of their practices, who had knowledge of the makeup of the organization, or rather the people that attended the different rallies, and who testified about his experience with this type of form that the Petitioner argues. I mean, but basically, this is an argument of interpretation. He says, Agent Castillo, and this really highlights the problem of reviewing decisions like this. Agent Castillo said that this was interpreted for them as a cell form. Based on the informant, correct? Based on his experience, based in part on the informant, but also based on his experience and other evidence that had been seized from that. Let me ask you something that I was also trying to get at with Mr. Vanderhoof. If we were to determine that the informant, not Mr. Tabatani's testimony or hearsay testimony, but the informant's testimony was hearsay of a nature that made the proceedings fundamentally unfair, at least as to that, if you were to take out that testimony, would you still be left with a basis for the Attorney General's decision? I think so, because, I mean, as I said, the statute says for any, at any time. And what happened in this case was that after they were released on bond, there was a search of an MEK safe house in which a form, which Special Agent Castillo testified that in his experience and in his dealings with the MEK, testimony that was corroborated by the informant, but if you take away the informant's testimony, you still have Agent Castillo's testimony. You still have this form that was found in the safe house, which their witness said that he thought it could be a travel log. But in fact, that these four brothers, their name was found in a house that was designated, and there's no argument that this residence was designated as a safe house for a terrorist organization. And what it comes down to is – Were all four brothers' names on the list? All four brothers were on the list, yes. If this was a travel log, then why did only two brothers travel to Denver? I don't know the answer to that question, and I think that that's one of the difficulties in this. And I would also say that even if it's a travel log, what were their names doing in a travel log maintained by a terrorist organization? There's no evidence that the MEK was soliciting general folks from the Iranian community in L.A. to attend this. And in fact, Agent Castillo testified that out of all of the people who attended this rally, that there were perhaps a handful who were not involved with the MEK, which is something that's overlooked. They say, we just attended this. But Agent Castillo also testified that they had surveilled this rally and that they had determined that only, I think it was maybe five or six out of the 100 or 200 people that attended it who were not involved with the MEK. I guess their argument is just being on a list doesn't mean anything. If you show up as a participant in the rally along with the congressman, why aren't you in the category, like the congressman, of simply expressing your First Amendment rights? You might be expressing your First Amendment rights. But the fact is, is that it wasn't just the fact that they attended this rally. It was a fact of, first of all, as far as First Amendment rights go, that has been limited somewhat because we have designated organizations which you cannot support, regardless of the First Amendment, that you cannot support. We have criminal laws preventing you from giving money to and voicing support for certain terrorist organizations. And we have immigration laws that make you removable for supporting those. So in fact, if you are attending and supporting, it's not a question of your First Amendment rights. I mean, so it's not a constitutional question. This, what this case really comes down to is, as I said before, it's a he said, she said. And the Petitioners are asking this Court, despite the bar in 236e, to reweigh evidence and to accept their interpretation of the evidence when, rather than the interpretation of the evidence. The Attorney General in this case had absolute discretion to revoke the Miramides bond at any time and for any reason. That decision was not subject to review by the district court. And I know that the Petitioners have focused on the mandatory detention issue in this case, but the Board, in fact, looked at both questions. And even if they were not subject to mandatory detention, they were subject to detention under 236a and 236b, which gives the Attorney General discretion. I think that Kim makes absolutely clear that the detention of aliens who are in removal proceedings during those proceedings is a constitutionally valid exercise of the Attorney General's authority to determine the removability of aliens who are here in violation. But you're saying that it's kind of an alternative holding, in effect, or an alternative basis for? It was an alternative basis, yes, Your Honor. And I think one of the problems with the Petitioners' brief in this case is that they ignore that alternative. There was a lot of focus in the Court below on the immigration judge's decision without really looking, and as a result, the district court focused on the mandatory detention language. But the Board did, in fact, make two alternative decisions. In fact, their primary decision was under 236a. And I think they went on to say, even so, as sort of an afterthought, they're subject to mandatory detention for being a national security risk. And that's a decision that the Petitioners have not focused on. It's a decision that is not subject to review by this Court, with the exception, perhaps, of a constitutional challenge under habeas. And I submit to this Court that none of the issues that the Petitioner raised in this arise to the level of either a constitutional or statutory violation such that they would be subject to habeas review. So I would ask that this Court dismiss the or, rather, perhaps remand to the district court with directions to dismiss for lack of subject matter jurisdiction. If the Court has no further questions. Thank you. Thank you. A few points in response. As to where the objection was raised to Tabataba, that's at 106 of the excerpts of record. Right. That's in the proceeding, not in your brief. Correct. In our brief, Your Honor. I can. That's fine. We'll take a look at that. I can submit that to the Court, absolutely. A couple points. The government says that they can detain, that the Attorney General can detain for any reason whatsoever, and that's completely unreviewable. Well, clearly that's not true. I mean, if the Attorney General decided this person is going to be detained because he's African-American, that would be reviewable by this Court. So there's obviously some limits to that and or maybe it wouldn't be African-American given the immigration case, but, you know, because the person is black or Latino or whatever it may be. So clearly there is review in the Court on some issues. We claim that one of the issues here is that being detained based on First Amendment protected activity, and that's clearly reviewable. The government misstates the law. The government counsel states that. Mr. Vandenbroek, let's pause there just for a minute. Your contention is that the reason that we can review this is because the Attorney General is burdening First Amendment rights. So the Attorney General detained them because of the exercise of First Amendment rights. That's one of six reasons I articulated, but that's one of them, correct. And the others were largely due process, substantive due process, procedural due process, questions going to admissibility of the evidence. Correct. And then one of them also was the review of the evidence as a whole that it doesn't support the conclusion at all. Why would that be a constitutional violation? Because if there's no – because you can only detain someone based on whether – on the fact that they're a national security threat or a danger to the community. If there's no reasonable evidence. But I thought that under 236 that you could detain, that the Attorney General could detain for any reason. No. Under Patel, the matter of Patel, which you cited in our briefs, the Board of Immigration Appeals held that you can detain someone if they're – as a matter of fact, they should be detained. I'm sorry. They can be detained if they're a flight risk or a threat to national security. That's what the Board of Immigration Appeals held and interpreted 236a, small a, that is. And that's been upheld by the courts, you know, since that – years ago. That is the standard basis. Now, you can also detain under mandatory detention if they fall within those categories of criminal aliens. And you can detain under 236A, which was added in the Patriot Act, if they're members of the supporters of a terrorist organization. By supporters, that is specific. That is, if they've provided material support to a terrorist organization. There's no allegation in this case that they have done so. The government claims that – that mere support for a terrorist organization is enough under 236a to detain them, but that's completely, completely wrong. Congress has specified the particular requirements under Section 212 of the INA and 237 of the Immigration Act of what is – when someone is deportable for support of a terrorist organization is if you're a member of a terrorist organization or if you've provided material support to that terrorist organization or engaged in – There's something where you and the government apparently see the law differently because INS says that under 236a and b, any reason is acceptable, not cabined by national security organizations or other details. And you're saying that under the services or the BIA's own opinions that it has to be either a flight risk or a security risk under 236a? Is that right? Under small a, correct. Under matter of Patel. Big a is the new thing. Correct. And – and then that ultimately has to be able to be reviewed by this Court. The Supreme Court said so in Bridges. The Supreme Court said so in Carlson v. Landon that you can assess the evidence and see if there's reasonable evidence to support that conclusion. Because otherwise – and to answer your question, Judge Breyman, it's whether or not it would violate substantive due process to hold someone without bail based on no evidence that they are violation – that they violate – endanger the national security. Well, what happens when we have different views of the evidence? If the Attorney General says, I've seen this – we've seen this list. It was found in a safe house. It appears to us based on – on our interviews and based on our view that this is – that this is a list of sympathizers with the M.E.K. And the Miramides have come in and said, oh, no, there's an innocent explanation for all of this. This is – this is the travel log for those traveling to the – to the Denver rally. Now, we have two explanations there. Why – why don't we – why don't – why aren't we deferring to the – to the Attorney General on that one? Well, for one, because this was habeas and evidence was presented to the district court as is permissible under habeas, which was not just the record reviewed by the immigration judge and the Board of Immigration Appeals, the district court had to conduct and this court has to conduct a novo review of that. In other words, you're not just reviewing the decision of the Board of Immigration Appeals and deferring to it or not. A lot of the evidence that was presented to the district court was the contradictory testimony of Castillo in the withholding cases. The deposition of Tabataba, who says, I didn't say that. That's completely untrue. The – and there was several other pieces of evidence presented for the first time in district court, which is entirely permissible under our habeas review, because the question is, is this lawful or not? So it's not just deferring to the BIA's interpretation of the – of the evidence. This court, the district court and then this court now, has to make a review of the evidence to decide whether or not there's sufficient evidence to show that there is danger to national security or perhaps danger to the community to justify the detention without bail. And that's an important distinction, a very important distinction, because you're not, as opposed to when you're doing direct review, just reviewing the record below. One other point I want to say is as to the hearsay and the Court's saying, Your Honor is asking, well, how do we assess this evidence? You also need to assess whether it's reliable evidence. That is, whether or not it's fair to conclude based on hearsay evidence that is not confronted in court that the individual is associated with the – with the organization And also, the Court has to review, this Court, whether or not that's a permissible basis. That is, as you said, Your Honor, whether or not this is the individual's sympathizer to the MEK. Was that a list of sympathizers? And as I said earlier, even if it is a list of sympathizers to the MEK, that's not a basis for detaining someone, because that does not mean they're a threat to national security, because they like the views of the MEK. There's nothing wrong in this country with liking the views of an organization that the government doesn't like. You're entitled to that opinion. Except that the Attorney General may detain people under 236A. Small A, you mean. Small A. It doesn't have any qualifications in that section. As long as they are in – an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. As long as you're in some kind of removal proceedings, then the Attorney General can decide to detain you. Well, except Congress specified who is subject to mandatory detention. Those are the ones you have to detain. The Attorney General then can individually analyze the facts of an individual case and determine whether or not the person is a sufficient flight risk or threat to national security under Patel to detain them. Other than that, or perhaps danger, danger to others is another one that's developed in the case law. Does Patel limit 236 small A to a flight risk or threat to national security? Well, I think, I think. It doesn't sound like those would be sufficient. Is that, is that the exclusive list? It's – case law has also implied, I would say, that, although it has a specific overrule, Patel, that if someone's a sufficient danger to the community, that they may be able to be held at that point in time. I'm just having a little trouble figuring out how that BIA decision would have in the statute, which doesn't have any list of factors. Because it's a constitutional matter. You cannot detain an individual without a reason. For no reason at all. With no reason at all. Correct. The government says, well, we can just detain the person, pending the hearing, you know, because we don't like them. You know, they, you know, they made a nasty comment to me when I arrested them. They said, you know, what are you doing to rescue me? But they haven't detained them for no reason at all here. We might disagree about the reasoning, but there was, there was a reason. And the question is, under little a, does, is the statute – you're, I mean, you're trying to set us up with this dichotomy that you've kind of got to fall in one box or the other, and I'm trying to understand if the statute compels that or case law compels that. But what you – there's two things. One is you have to look at what the Board of Immigration Appeals did, and they said there's sufficient evidence to believe the individual is associated with a terrorist organization to deny bond. So that was the basis of the Board of Immigration Appeals' decision. This Court has to have the power and does have the power to review that to see whether or not there is sufficient evidence to make that conclusion. Mr. Vanderholt, if we concluded that there was sufficient evidence to support that finding, read that finding to me one more time, what the conclusion was. We agree with the immigration judge that the respondent is now subject to detention without bond as an individual associated with a terrorist organization. Okay. Associated with a terrorist organization is a little different from flight risk and national security. My precise point. But that sounds like that's the BIA then telling us evidently that 236 is broader than just flight risks or risk to national security, which are clearly emendations to 236's little a. Since those are not found any place in the statute. Well, no, Your Honor, because it references back, I'm sorry, the immigration judge's conclusion that there's threat to national security because of association with the M.E.K. Okay. So it references back the immigration judge's conclusion. All right. So the justification then in this case does fall within the Patel emendation on 236a, that is, that the Miramides are a threat to national security because they are associated with the declared terrorist organization. Correct. That is the conclusion. But our point, Your Honor, is that you can't just say, well, they said the magic words. Therefore, we have no ability to look behind that conclusion. This Court has to look at the record and also the record developed in district court to see whether that conclusion was based on admissible evidence, first of all, and be whether or not, even if it was totally admissible evidence, whether or not that conclusion is supported. That seems to me to go right into what Congress told us we shouldn't be doing. No. And I disagree with that, Your Honor, with all due respect, because Congress said the discretionary determination. But there's no discretion to hold someone without bail. That is, there's no discretion because the Constitution limits that discretion. The Constitution says an individual is entitled to the freedom absent a justifiable limited reason by the government to detain them without that. It's not the opposite. That's what the Constitution says, and that's what the Court has interpreted the Constitution said under Kim and Zevon. Yeah. Well, here's a little bit of a problem on that. I thought there was a little more wiggle room than apparently the majority thought in Gutierrez-Chavez on when an abuse of discretion actually is a constitutional violation. But the way the majority came down there, they basically said when you have this How do you get around that here? Okay. That's true. And the reason is because that was reviewing discretionary determination. Whether or not the Attorney General, in the exercise of his or her discretion, can or should have granted 212C, that is a purely discretionary determination. And therefore, when reviewing the discretionary determination, this Court, as Your Honor knows in the Gutierrez-Chavez case, said in reviewing that discretionary determination, we're not going to get into an analysis here and review whether or not the Board of Immigration Appeals applied the facts correctly in this case and whether or not they should have committed a different result. Why? Because that decision is discretionary. The decision to detain someone without bail is not a discretionary determination. You mandate under the Constitution to be free unless, unless there is a compelling government interest based on a — on special circumstances, as the Supreme Court said in its advice. And the special circumstances is interpreted to be threat to national security or perhaps danger to the community. So then the Court has to look at that evidence to see whether or not that is supported. And the — Mr. Vander Hill, once we start down that road of looking at the sufficiency of the evidence, then we've completely undone 236E. How does — how can you give — how can you construe this this way and give 236E any meaning at all? Well, 236E has to be — Once we deem sufficiency of the evidence to be a colorable constitutional claim, then we are in the position of being able to review any determination by the Attorney General under 236A. And that would seem to be contradictory to 236E, which tells us that courts won't review those determinations. No, Your Honor, I don't think so. And let me explain why. 236E has two sentences. One is — is we won't review the discretionary judgment about the application of 236 of this section, the application of it, which — which isn't the decision in the individual case. That is, whether to apply 236 procedures or not. That is, whether an immigration judge gets to hear the case, whether the INS individual gets to hear — make that determination, et cetera. That's the application of it. That's the Attorney General's discretionary application — discretionary judgment as to the application of that. The second sentence deals with the issue of — says no court has any — has reviewed — may review the determination made here, which is different. That is clearly — But it says no court may set aside any action or decision — Correct. — by the Attorney General under this section regarding the detention — I'm skipping   Correct. — of any alien under the grant revocation or denial of a bond or parole. Right. And that would clearly, as it pointed out, if the Attorney General denied bail because the individual is black, that's clearly reviewable here. It's — just because Congress has that sentence, it's got to be — this Court has to construe that statute on Congress. Well, we're now back to — those are the easy cases, because we've already said, and I — I'm sorry. You're on the line. I said that's an easy case, the black person, because I think I heard the Attorney General's representative say, yes, there would be jurisdiction to review a constitutional claim. But then we get back to the question I asked you earlier, is when you have what I think is a sufficiency of the evidence claim trying to be kind of morphed into a constitutional claim. And that's what we're — I think that's the harder issue we're trying to sort out here, why this isn't really just a sufficiency of the evidence claim and not a constitutional claim. Well, but — and again, I'm sorry, maybe I'm not making my point clearly enough, and I apologize. But under the sufficiency of the evidence, this Court does — does have the power to review that. First of all, again, we have to remember that this was a habeas challenge where new evidence was presented. That means you're not just reviewing the decision of the Board of Immigration Appeals, and that is permissible. So you're not just saying, did the Board err or not? Because what was presented to this Court was information that was not before the immigration judge. It was the information of the contradictory testimony of Castillo in the withholding cases, the deposition of Tabataba where he says, I didn't say this. And so it's very different than Gutierrez-Chavez, which was just review of the record and you're limited to that. Here, there was a separate inquiry that district court had to undertake, and the review of that is de novo by this Court, based on the evidence. And so you have the immigration judge in the Blount case not having the advantage — and the Board of Immigration Appeals is the same — not having the advantage of hearing the contradictory testimony of Castillo and not having the deposition of Tabataba, which says, I didn't say that. So clearly, you're not in the same situation, Your Honor, as you would be if you were in a direct review. And that's the difference between habeas review and the review in this — in this case of the Blount determination. But I would also point out that even back to, as I mentioned, Carlson v. Landon in the Supreme Court decision when the only review was the review — the ability to review the Blount determination under the Constitution, what the Supreme Court said in that case is that there can — the decision can be overridden where it is clearly shown that it was without a reasonable foundation. Supreme Court, in reviewing the Bond issue in Carlson v. Landon, said, we have to look at this evidence to make sure there's a reasonable foundation for the conclusion. And that was based on habeas when there was no other review whatsoever. And I think that, Your Honor, is why 236e has to be interpreted this way to provide for all the review that I've stated here, but particularly because you're not reviewing just the decision that was before it. I'd like to make one point, just in what I think the Court should do if it agrees with us on this, and that's that we don't believe that remand through the district court, to the Board of Immigration Appeals, the immigration judge, for determination on how much failed appropriate now is the appropriate recourse. I'd like to explain why. These individuals have been detained for two-and-a-half years. That would be a many, many, many-month procedure. The issue of flight risk was not up for reexamination. So if this Court concludes that the changed circumstances were not merited, that is, it was either unreliable evidence or it's not supported by reasonable foundation, then the Court should throw out that redetermination and hold that they must be released based on the bond that was initially set by the immigration judge on the flight risk determination. And the reason I feel so strongly about that, Your Honor, and that's so important to my clients, is that if the Court overturned the district court and the Board of Immigration Appeals, and ultimately the immigration judge, and said there was no sufficient change circumstances here, re-decide the bond, we could be another year down the road. And since the flight risk determination was not up for grabs here, that is, if they're not associated with the MAK sufficiently to deny bond whatsoever, then the original decision of the immigration judge's pre-redetermination based on the alleged changed circumstances should remain in effect, and I would urge the Court to rule that way or we're going to sit another year in jail. Thank you very much. Thank you. The matter will stand submitted, and the Court will recess until 9 a.m. tomorrow morning. Thank you, Your Honor. This clock is still on regular time. Yeah. Thank you.
judges: Pregerson, McKeown,bybee